

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

MAR - 9 2026

ARTHUR JOHNSTON
BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**KENNETH AKINS**                                            **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO.:** 3:26-cv-152-KHJ-MTP

**NISSAN NORTH AMERICA, INC.**                               **DEFENDANT**

## COMPLAINT
### (A JURY TRIAL IS DEMANDED)

COMES NOW Plaintiff, KENNTH AKINS, (also referred to as Plaintiff) and brings this action against the captioned Defendant. As more specifically set forth below, Plaintiff has been subjected to race discrimination, racial harassment, and retaliation. The actions of the Defendant described herein constitute violations of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000 *et seq.* as amended, (hereafter also referred to as "Title VII"). This is to allege Plaintiff is entitled to all recoverable costs, amounts, damages provided for and within Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000 *et seq.* as amended, 42 U.S.C § 1981a. This action also arises under the Family Medical Leave Act (FMLA), 29 U.S.C § 2601 *et seq.* and Plaintiff claims damages in excess of $15,000.00 exclusive of fees and costs in addition to other damages contained in the Prayer for Relief below.

In support of Plaintiff's Complaint and causes of action set as forth herein, Plaintiff respectfully sets forth the following:

## JURISDICTION AND VENUE

1.     At all relevant times hereto Defendant has been an Employer engaged in an industry affecting commerce within the meaning of Section 701(b), through (h) of Title VII, 42 U.S.C. §2000e(b) through (h) and other relevant sections of law. In the alternative and in addition, Defendant otherwise falls under the jurisdiction of (and is subject to) laws noted in this Complaint.

1

Plaintiff specifically claims Plaintiff is entitled to recover all such available damages recoverable under all laws referred to in this Complaint, all of which are sought pursuant to this Complaint whether or not specifically noted below.

2.    All matters are set forth while reserving the chance to provide additional or explaining details. The Counts below are intended to include claims with similar legal basis in the interest of organization and efficiency. Nevertheless, there may be multiple claims in on or more Counts and this Complaint should be read consistent with alleging one or more claims within Counts.

3.    Plaintiff has satisfied administrative conditions prior to the commencement of this action, by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission on or about 3.3.25 with an Amended Charge filed on 6.3.25. Plaintiff was issued a Right to Sue letter which is attached hereto as part of *Exhibit "A"*. Exhibit "A" therefore contains the Charge, First Amended Charge, and Right to Sue incorporated into this Complaint as though its contents were explicitly set forth. IN THE INTEREST OF EFFICIENCY, PLAINTIFF INCORPORATES HIS CHARGE AND FIRST AMENDED CHARGE INTO THE PROVISIONS OF THIS COMPLAINT

4.    For the purposes of this Complaint, all conduct, facts, occurrences, acts and omissions providing any basis for the civil rights violations, federal law violations, state law violations perpetuated by Defendant (including but not limited to sex discrimination, sexual harassment) shall hereafter be referred to as "actionable conduct".

## PARTIES

5.    Plaintiff, KENNETH AKINS, is domiciled and can be found at 111 Creekside Dr. Canton, MS 39046.

6.    Defendant, NISSAN NORTH AMERICA, may be served with process through its registered agent CORPORATION SERVICE COMPANY located at 109 Executive Drive, Suite 3 Madison, MS 39110.

7.    Plaintiff reserves the right to amend this Complaint to assure proper parties are before the Court, (and the proper registered agent is served and that the proper places of business are noted). This shall also serve as Plaintiff's motion to substitute parties, and registered agents, and to assure proper parties and party names are before the Court to the extent Plaintiff wishes to advance the same.

## FACTS

8.    Plaintiff worked for Defendant from on or about 2002-2008 and then returned on June 4, 2018, until his discriminatory and retaliatory departure from the employment. Plaintiff was in fact not terminated in so far as he is listed as retired in Defendant's system. Notwithstanding, on or about April 10, 2025, Plaintiff was told unequivocally that he was not to return to the worksite. Nothing made known to Plaintiff suggested or evidenced any intent to include in him a fair and impartial investigation regarding his multiple complaints of racial discrimination and retaliation.

9.    On or about 2023, Plaintiff applied to be manager of the control room. Despite his superior qualifications and experience, Defendant selected a significantly lesser-qualified candidate, Stephanie Wimbley (African American), without any relevant experience. Plaintiff is a member of a protected class, the Caucasian race. The individual hire was outside of Plaintiff's protected class.

10.    Immediately after she became Plaintiff's immediate supervisor, she began targeting Plaintiff and changing his schedule to less desirable shifts.

11.    By way of background Plaintiff's schedule remained fixed from 7 o'clock A.M. to 3 o'clock P.M. since the time he began working for Defendant. It was change to 9 o'clock A.M. to 5 o'clock P.M., a less desirable shift.

12.     On or about October 2024 upon returning from a medical leave of absence Plaintiff's schedule was changed again to 10 o'clock A.M. to 6 o'clock P.M., an even more objectively undesirable shift that no other Analyst had.

13.     Around this time Plaintiff filed a complaint in October 2024 expressing that he believed that Defendant was discriminating against him because of his race.

14.     Defendant did not substantially address Plaintiff's concerns, conducted no meaningful investigation that involved him, and closed the grievance.  Since no action was taken, Plaintiff filed another grievance in November 2024 reiterating the same complaints, and referencing the closure of his previously unaddressed complaint.

15.     On or about February 18, 2025 Plaintiff got called into a meeting with Wimbley and a regional HR employee who presented Plaintiff with a "Letter of Understanding" outlining multiple alleged issues with Plaintiff's work and alleged need for improvement.

16.     By way of background also, Plaintiff did not have any prior disciplinary actions.  His performance reviews were always positive.  Plaintiff was therefore confused and objected to the claims in the letter.

17.     Plaintiff immediately complained to Cliff Peyton, the Department Manager and Wimbley's immediate supervisor.

18.     In addition, Defendant engaged in race discrimination when it actively established a group for Black employees at Nissan which excluded other races.  Respondent did not offer a corresponding group where those of the Caucasian race could convene.  Defendant's African American employees where therefore given preferential treatment and within the context of a formal group that did not include others.

19.    The majority of the Defendant's Canton, Mississippi HR personnel are African American. Plaintiff has expressed multiple issues to the local HR representatives regarding Wimbley's adverse actions against him to no response nor significant action.

20.    Plaintiff further witnessed African Americans engaging in similar or worse conduct than he was charged with at the time of his discriminatory and retaliatory discharge.

21.    The events preceding Plaintiff's forced departure are attached in the Exhibit "A" Charge. The Amended charge contained within Exhibit "A", contains further details regarding the events preceding this disciplinary action establishing that action was wholly unfounded.

22.    On April 7, 2025, Plaintiff was called to a meeting with supervisor Cliff Peyton to discuss an email Plaintiff sent to control room coworkers reporting an employee sleeping on the job. The email was in no way offensive and did not use any improper language nor made any improper allegations. Plaintiff in fact witnessed an employee sleeping on the job. It was Plaintiff's duty to assure matters such as this were reported. Notwithstanding Plaintiff was targeted for the email not withstanding similar or worse offenses engaged in by African American analysts in the control room.

23.    Prior to that time on April 1, 2025 Plaintiff was prescribed medication following a pain management procedure and was unable to understand the nature and quality of his actions during the time when he apparently sent the email.

24.    Following that time on April 7, 2025 saw the nurse practitioner with Progressive Health (Nissan Facility) Deanna Collins at the request of Cliff Peyton, a director at the Nissan Plant.

25.    Plaintiff conveyed that he was temporarily mentally deficient. While Defendant may not acknowledge that it determined Mr. Akins to be mentally deficient, Mr. Peyton knew Plaintiff needed an evaluation by Ms. Collins, the nurse practitioner.

5

26. Mr. Peyton therefore clearly knew that Plaintiff was in need of an evaluation by Ms. Collins and so sent Plaintiff there for an evaluation of what may have affected his actions given his medication and obvious impairment.

27. Plaintiff informed Ms. Collins about the medication yet she indicated to him that she already knew about the situation and also indicated that she had communicated with one or more supervisors as to what was going on.

28. Nurse practitioner Collins clearly understood that Plaintiff was undergoing health issues and did not know he even sent the email.

29. Ms. Collins expressed that she was not surprised that he had no memory as Plaintiff discussed his temporary deficiencies due to the medication.

30. It is reasonably believed that Defendant by and through Nurse Practitioner Collins breach Plaintiff's health privacy under HIPAA (Health Information Portability and Accountability Act) when one or more supervisors discussed matters related to his health with the Nissan medical facility. He did not authorize those communications

31. On April 8, 2025, Plaintiff had an appointment with his primary care physician at the direction of Deanna Collins. Ms. Collins informed him that she did not want him to come back to work before he was cleared by his primary care physician.

32. Shortly thereafter on April 9, 2025, Plaintiff sought to take leave under the Family Medical Leave Act for a period of 4/8/2025 to 6/2/2025. Nissan acknowledged Plaintiff's request and sent information regarding his FMLA rights.

33. Defendant was therefore clearly on knowledge of Plaintiff's intentions to take FMLA leave.

34. Plaintiff was told on April 10, 2025 that he could not return to the property, due to alleged "misconduct". Plaintiff was provided no details substantiating that allegation.

35.    The allegation clearly referred to an incident with the email as related to the only event that could have remotely been described as misconduct. By that time, Defendant was aware that Plaintiff had filed an EEOC Charge.  To the extent Plaintiff was targeted for misconduct allegations due to an alleged improper email, Defendant was on clear notice that Plaintiff was in an incapacitated state when it spoke with nurse practitioner Collins about Claimant's protected health information.

36.    Plaintiff in fact reported similar or worse conduct of African Americans in the control room.  That conduct was obviously worse than the conduct which Plaintiff engaged in which Plaintiff maintains was not misconduct at all.

37.    Depending on the occasion Plaintiff complained about the misconduct of similarly situated African Americans in the control room.  Plaintiff complained to Jordan Holingsworth, Stephanie Wimbley, and to Nissan HR.  Plaintiff complained often.

38.    Plaintiff personally witnessed similarly situated African Americans taking extensive break times beyond reasonable time allowed, use of the internet regularly for non-business purposes, sleeping on the job, being late for work, and being outside of the control room when visiting other non-Nissan groups.

39.    On February 5, 2025 Plaintiff complained to Stephanie Wimbley, yet on this occasion he made an Ethics Point complaint.

40.    Plaintiff specifically informed Jordan Hollingsworth on multiple occasions about the conduct in the control room wherein African American employees were taking multiple extended breaks.  Plaintiff personally witnessing them nap on the job and discussing things that were clearly not work-related.

41.    Plaintiff witnessed regular open surfing of the internet by these employees as well as extensive vulgar language and sexually explicit conversations.

42.     Defendant apparently turned a blind eye to these violations when it targeted Plaintiff after his race discrimination complaints.

43.     Plaintiff made three attempts to initiate Ethics Point complaints. (Ethics Point complaints was the channel Defendant used for written complaints of discrimination and retaliation.) By that time Plaintiff had made numerous verbal complaints to Jordan Holingsworth.

44.     Plaintiff made an Ethics Point complaint on 10/10/2024 as contained in the attached *Exhibit "B"*.

45.     In that complaint, Plaintiff complained about discrimination insofar as he was excluded from being apart of a group of African Americans and that there was no group for non-African Americans.

46.     Defendant has apparently not recognized that allowing certain groups to segregate and to provide them the benefits of a group based on race is and was clearly discriminatory. The only reason the group existed was for African-Americans. Plaintiff was not allowed to be part of a similarly group restricted by race. Plaintiff further complained about Defendant's DEI practices insofar as they contributed to the exclusion of Plaintiff from a Nissan Group.

47.     It is incredulous to Plaintiff that Nissan denies that Plaintiff ever reported discrimination. No action was apparently taken due to the 10/10/2024 complaint. Plaintiff made a second written Ethics Point complaint on 11/25/2024, specifically referencing race discrimination.

48.     This reference to race discrimination was undoubtedly referring to Plaintiff's complaints of just that, racial discrimination. The 11/25/2024 Ethics Point complaint is attached as *Exhibit "C"* along with Plaintiff's 2/21/25 Ethics Point complaint.

49.     Within that Ethics Point complaint and on 12/3/2024 Plaintiff informed the Employer that he had filed a charge of discrimination. (At the time Plaintiff thought he filed a

charge, but it was not in the charge process yet). Plaintiff clearly expressed the intention to complain about discrimination and retaliation with EEOC.

50. The discrimination charge was ultimately filed on March 3, 2025, though no apparent action was taken to investigate Plaintiff's 11/25/2024 Complaint nor the previous one 10/10/2024. The notes of the 11/25/2024 Ethics Point complaint shows that no actions were taken to speak with Plaintiff or otherwise consider his complaints. Plaintiff's complaints were clearly disregarded.

51. The Defendant tried to reach Plaintiff on 3/31/2025, so as to appear as if they were taking action finally, though recognize that Plaintiff was asserting his right to relief from the EEOC by that time. The lack of action is evident when considering the notes on 3/31/2025 in the complaint entries.

52. These written complaints occurred in conjunction with numerous verbal complaints that were not investigated or addressed as Plaintiff was targeted.

53. On 2/26/2025 Plaintiff complained about the use of profanity by similarly situated African Americans. Plaintiff complained to Jordan Hollingsworth and Stephany Wimbley.

54. Plaintiff also reported conduct that he believed was sexually harassing.

55. Plaintiff reported that his manager Stephanie Wimbley, along with coworkers Allison and Lee were talking in an extremely loud manner discussing a woman that slept with 1000 men in a day.

56. These similarly-situated employees were making numerous crude comments in the open work environment clearly identifying those comments to be heard.

57. The situation was disturbing and offensive. Notwithstanding, it was allowed to occur between non-African Americans when Plaintiff was in fact targeted for conduct he should not have been targeted for.

58. Plaintiff thereafter received a post on the Ethics Point system stating that appropriate action had been taken with regard to the sexual harassment complaint. Plaintiff was never interviewed, never told to provide any further details, and never contacted at all. Defendant clearly disregarded him.

59. Plaintiff's direct supervisor Stephany Wimbley thereafter clearly acknowledged knowing about the report because she talked loudly and sarcastically in a negative tone about language that would no longer be allowed.

60. Ms. Wimbley clearly showed animosity to the fact that this issue was raised. Unlike Plaintiff's email, the statements in his email were not gross, lude, nor offensive, but in fact pointed out an African American employee sleeping on the job. Plaintiff was discriminated against and retaliated against when he was targeted for this email under circumstances defendant knew through violating his HIPAA rights, that Plaintiff was not in control of the nature and quality of his actions.

61. The environment was replete with numerous violations on the part of similarly situated African Americans.

62. Plaintiff made Defendant aware that he filed his original charge on Monday 3/3/2025.

63. After Plaintiff's Ethics Point complaint about discrimination, on 1/27/2025 Plaintiff was discriminated against due to his shift hours being changed.

64. Plaintiff was treated differently than a lesser qualified similarly situated African American female with regard to shift assignments. The lesser qualified African American female received a 1 P.M. to 9 P.M. shift wherein she was allowed to get additional payment. Plaintiff was denied of this opportunity.

65. Plaintiff had previously seen and reported this employee leaving for extended periods of time in excess of an hour to visit previous coworkers from a group outside Nissan.

66. On 2/5/2025, Plaintiff reported discrimination and harassment because he was overlooked for the aforementioned promotion.

67. Shortly thereafter on 2/19/2025 Plaintiff informed Defendant that he was being retaliated against because he was called into a disciplinary meeting for the first time and realized that he was being targeted for alleged employment violations that were groundless.

68. When Plaintiff reported discrimination through the Ethics Point system on 11/25/2024 Plaintiff received a post from the organization acknowledging he complained of race discrimination in his original report. Plaintiff was told to contact Defendant if he felt he was being retaliated against and did in fact do so.

69. On 1/30/2025, Plaintiff made a post associated with his race discrimination complaint indicating that he was punished for speaking out due to shift changes.

70. Notwithstanding all of his complaints, he was never included as part of any investigation to provide a statement or any further information to assist that investigation. Plaintiff was not requested to provide any details and Defendant ignored having him do so. It was only after advancing matter before the EEOC on 3/3/2025 that Plaintiff heard on 3/31/2025 that the Ethics Point report was finally received.

71. This represented a late and pretextual attempt to support a position that there was in fact an adequate investigation when there was not. Also on January 30th, 2025, Plaintiff reported the conduct of African American employees referred to above engaging in worse offenses.

72. Plaintiff also complained that Defendant was not in compliance with DEI standards so as to treat those of different races equally. Nissan may set forth that it had those standards to protect African Americans from discrimination, yet this position (if it is Defendant's) is unfounded and ignores that African Americans are not able to receive preferential treatment under the law based on their race.

11

73.     Plaintiff and similarly situated non-African Americans were not afforded the benefit of being involved in any organization based on their race.

74.     Nissan's decision to allow a community of African Americans is in direct violation of its principles to treat races equally without giving preferential or differential treatment to any group.

75.     Instead, Defendant set up and allowed a collective group of African Americans serving to alienate non-African Americans. As stated, on 2/10/2025 the respondent acknowledged Plaintiff's report and asked him to contact Ethics Point if he felt he was retaliated against. He did.

76.     Prior to Plaintiff's discriminatory and retaliatory discharge, and during these events, Stephany Wembley alleged that she observed multiple employment problems. This was completely subjective and unsupported. It was a clear attempt to intimidate Plaintiff due to his complaints of discrimination.

77.     Plaintiff was told that he left his assigned job duties during a shift that without supervisor's permission and he was allegedly not at his desk for working hours. Plaintiff was told that he was absent on 1/29/2025 for approximately 2-3 hours. Plaintiff was never absent.

78.     Plaintiff was then told that he did not answer phones timely. This was extremely subjective and ignored the disregard for work illustrated by numerous African Americans in the control room.

79.     While Plaintiff makes complaints of race discrimination, his FMLA rights were also violated. Plaintiff sought to take leave under the FMLA which Defendant acknowledged but failed to allow when it failed to protect his job. Plaintiff fulfilled all requirements to take leave and Defendant was notified of his intentions. In addition to intentions that were discriminatory, Defendant discharged Plaintiff in retaliation for taking that leave as well.

80.     Plaintiff is an individual and considered a "Eligible employee" within the meaning of the FMLA at all times referred to in this Complaint.

81. Defendant was an "Employer" within the meaning of the FMLA, at all times referred to in this Complaint.

82. Any reason set forth by Defendant are and were pretextual and/or unworthy of relief. They were pretextual for the multiple acts of discrimination and retaliation referred to in this complaint.

**CAUSES OF ACTION**

**COUNT I:**
**CLAIMS UNDER TITLE VII AND SEPARATELY UNDER 42 U.S.C. § 1981 FOR RETALIATION**

83. Plaintiff re-alleges and incorporates all provisions set forth above and below as if fully incorporated herein. The claims alleged in this Count are alleged in the alternative, and in addition, to each other.

84. Plaintiff was treated adversely with regard to the terms and conditions of employment when Plaintiff was retaliated against by Defendant due to opposing conduct reasonably believed to be discriminatory. Plaintiff was retaliated against following the time Plaintiff complained. Plaintiff was retaliated against by Defendant' open intentional failure to adequately investigate, or address Plaintiff's complaints referred to above, and by its failure to allow him to see Plaintiff's concerns investigated prior to Plaintiff's discharge, and/or otherwise as a result of Plaintiff's complaints. Plaintiff was retaliated against when Defendant engaged in the adverse actions referenced above in the section of Facts against Plaintiff for complaining including, but not limited to his discharge itself.

85. Plaintiff was retaliated against by an increasingly hostile and discriminatory work environment as a result of Plaintiff's complaints as more fully described above and in discovery.

86. Defendant are alleged to have violated section 704 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 *et seq.*, as amended including but not limited to the Civil Rights Act

13

of 1991, 42 U.S.C. § 1981a, providing rights to broad recoverable damages, and/or all other provisions which would address the actionable conduct or provide remedies, therefore. Defendant also violated 42 U.S.C. § 1981 generally and Plaintiff brings separate claims under § 1981. Plaintiff had a right to be free from the effects of retaliatory practices in Plaintiff's employment relationship.

87.    Plaintiff makes separate claims for each act of retaliation perpetuated upon Plaintiff following each separate time complaining. Plaintiff makes separate claims under all laws applicable to his allegations for each act of retaliation referred to in this paragraph, this Complaint, and which may be illustrated in discovery.

88.    As a direct and proximate result of Defendant' conduct toward Plaintiff, Plaintiff has sustained losses as more fully described below herein. The losses and damages which Plaintiff suffered and as referred to in this paragraph are also meant to include and incorporate any losses and damages noted and referred to in all other parts of this pleading incorporated herein.

89.    In the alternative and in addition, the unlawful actions of the Defendant were in reckless disregard for the statutory rights of Plaintiff. Plaintiff reserves the right to argue Defendant' actions were wanton, and/or willful. Defendant acted unreasonably.

## COUNT II:
## CLAIMS UNDER TITLE VII AND SEPARATELY 42 U.S.C. § 1981
## FOR RACIALLY-BASED DISCRIMINATORY TREATMENT

90.    Plaintiff re-alleges and incorporates all provisions set forth above and below as if fully incorporated herein. The claims alleged in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts as well. Plaintiff makes separate claims for discriminatory demotion and discharge.

91.    Defendant are alleged to have violated Section 703 of Title VII, 42 U.S.C. § 2000e-2 *et seq.* as amended, as well as 42 U.S.C. § 1981a, in ways outlined in this Count and Complaint.

14

Separate claims contained in this Count arise under 42 U.S.C. § 1981. Plaintiff seeks all damages available under all laws referred to in this Complaint.

92.    Plaintiff is a member of a protected class recognized by the Fifth Circuit, the Caucasian Race.  In the alternative and in addition, Plaintiff is otherwise subject to the protection of all laws referred to in this Complaint.

93.    Plaintiff was subject to treatment for all reasons and based on all facts referred to above.  Plaintiff makes separate discrimination claims for each act of disparate treatment including but not limited to:

a. Claims based on Plaintiff not being afforded the opportunity to have a segregated group of Caucasian employees when it allowed such a group based solely on the race to those it would allow to have a group.

b. Claims based on Plaintiff being subject to shift changes and related adverse action.

c. Claims based on Defendant's failure to investigate his complaints of discrimination when it is reasonably believed to have investigated numerous complaints made by African Americans.

d. Claims related to Plaintiff's discharge based on race when it did not terminate similarly-situated African Americans for similar or worse offenses.  Plaintiff maintains he committed no offence, and in the alternative and in addition, claims that anything claimed as an offence was not one.

94.    In the alternative and in addition, regardless of Defendant' treatment of others, Plaintiff was discriminated against regardless. Plaintiff reserves the right to rely on direct evidence of discriminatory intent.

15

95.     As a direct and proximate result of Defendant' conduct toward Plaintiff, Plaintiff has sustained losses as more fully described below herein. The losses and damages which Plaintiff suffered and as referred to in this paragraph are also meant to include and incorporate any losses and damages noted and referred to in all other parts of this pleading incorporated herein.

96.     In the alternative and in addition, the unlawful actions of the Defendant were willful, intentional, and in reckless disregard and/or deliberate indifference for the statutory rights of Plaintiff. Defendant acted unreasonably.

**COUNT III:**
**VIOLATIONS OF FMLA**
**AND INTERFEREANCE WITH FMLA RIGHTS GENERALLY**

97.     The allegations contained in Paragraphs above and below are incorporated herein by reference as though expressly set forth.

98.     Defendant interfered with, restrained, and/denied Plaintiff's exercise of his rights under the FMLA by taking adverse employment action as referred to above.

99.     Defendant completely failed to afford Plaintiff the rights available under the FMLA so as to keep his job for him.

100.    Plaintiff was at all times, an eligible employee. He worked for a covered Employer. He was entitled to take FMLA leave and not to be terminated.  Plaintiff notified Defendant of his intention to take FMLA leave, and Plaintiff was denied the benefits that he was entitled to.

101.    Defendant refused and/or denied and/or willfully disregarded Plaintiff's rights to leave under the FMLA and instead summarily terminated him.

102.    Plaintiff alleges that while Defendant violated the FMLA and terminated him for taking leave as well as retaliated against him for seeking FMLA, Defendant carried out these violations as part and parcel for racially discriminatory and racially retaliatory conduct.

16

103. While Plaintiff's claims exist regardless, Plaintiff alleges in the alternative and in addition that Defendant's violations were intentional, willful, and/or in reckless disregard for his statutory rights.

104. Defendant has violated the FMLA including but not limited to § 105 and § 825.220.

105. All losses alleged and or referred to in this Complaint were incurred as a direct and proximate result of Defendant' conduct and legal violations.

106. Plaintiff has suffered losses referred to below as a direct and proximate result of the above breaches. The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.

## COUNT IV:
## FMLA RETALIATON

107. The allegations contained in Paragraphs above and below are incorporated herein by reference as though expressly set forth.

108. Plaintiff sought to exercise and attempted to exercise FMLA rights.

109. Plaintiff exercised his statutorily protected rights in claiming he was entitled to FMLA leave. Defendant took adverse action against him in the form of discharge which adverse action was caused by his attempts to exercise her FMLA rights.

110. Defendant has violated the FMLA including but not limited to § 105 and § 825.220.

111. Defendant refused and/or denied and/or willfully disregarded Plaintiff's rights to leave under the FMLA and instead summarily terminated him. In the alternative, Defendant acted with reckless disregard.

112. While Plaintiff's claims exist regardless, Plaintiff alleges in the alternative and in addition that Defendant's violations were intentional, willful, and/or in reckless disregard for his statutory rights.

17

113.    All losses alleged and or referred to in this Complaint were incurred as a direct and proximate result of Defendant's conduct and legal violations.

114.    Plaintiff has suffered losses referred to below as a direct and proximate result of the above breaches. The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint

DAMAGES INCLUDING, BUT NOT LIMITED TO,
PUNITIVE DAMAGES

115.    Plaintiff re-alleges and incorporates all averments set forth in all paragraphs above as if fully incorporated herein. Plaintiff suffered losses and damages as set forth below and incorporated herein as a result of Defendant actions, inactions, and tortious breaches. Plaintiff preserves a claim for punitive damages for conduct which was grossly negligent, willful and/or wanton and/or in reckless disregard for her civil rights as well as in reckless disregard for the above law (as she alleges the conduct was). Defendant acted in reckless disregard for Plaintiff's civil rights and for the law in their actionable conduct, giving rise to the above claims. In the alternative and in addition, Defendant's actions against Plaintiff were of the kind and character so as to support all damages referred to in this Complaint including but not limited to punitive damages.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF RESPECTFULLY PRAYS that the Court cause service to issue in this cause upon the Defendant and that this matter be set for trial on each separate claim(s) in each separate Count. Upon trial by jury thereon, Plaintiff prays that the following relief be granted separately for each Count, claim, or cause of action against each proper Defendant separately, individually and together.

1. Front pay/lost wages as well as back pay/lost wages to the fullest extent recoverable, value of employment benefits of any kind (including but not limited to lost value of any insurance or anything of value Plaintiff received during employment or would have received during or

18

following employment if not for the conduct alleged), lost value of incidentals, benefits of employment of any kind, whether retirement, healthcare or otherwise, and other pecuniary losses proximately caused by Defendant's unlawful conduct to be illustrated in discovery, as well as all other fair compensation for the acts and omissions referred to;

2. Damages against Defendant in an amount to be determined by the jury for damages described above and herein and above the minimum jurisdictional amount. Those damages include but are not limited to (recovery for the following categories of damages are sought in the alternative and in addition to each other): compensation for past, present, and future emotional distress and non-economic losses; past, present, and future out of pocket costs and attorney fees; past, present, and future loss of enjoyment of life; past, present, and future pain and suffering; past, present, and future mental anguish; past, present, and future lost wages to the fullest extent recoverable; loss of wage earning capacity; costs related to medical and mental health treatment which Plaintiff has incurred following the actionable conduct due to severe distress, and which might occur in the future, and which Plaintiff might be recommended to have, or which he might have been recommended to have.  Plaintiff therefore specifically prays for compensation related to any medical care, counseling, mental health care, psychiatric or psychological care which might be recommended or which might have been recommended, which might occur, or which might have occurred, in the past, present or future, or for the past, present and future.  Recovery is sought to be calculated based on each separate claim and cause of action individually to the fullest extent possible. Plaintiff prays for a right to a jury trial under the Constitution for each claim. Plaintiff prays for all other compensatory damages, and other damages he may legally recover under State and Federal Law.  Plaintiff also claims all costs, pre-judgment interest, post-judgment interest, costs of this action, expenses of this action, expert witness fees and reasonable attorney's fees and any other damages allowed under actions brought pursuant to all above laws, under which Plaintiff

19

specifically intends to bring this Complaint; and

3. Plaintiff prays for all compensatory damages and other damages available as a result of Defendant's tortious breaches, torts, State and Federal and legal violations.

4. Plaintiff prays for punitive damages in the maximum amount allowed by law.

5. Plaintiff prays for liquidated damages per the FMLA.

6. Plaintiff prays for such further relief as is deemed just and proper. (Plaintiff claims all categories of damages recoverable in this action including but not limited to all compensatory and punitive damages).

## JURY TRIAL DEMAND

**Plaintiff demands a jury trial on all matters raised by this Complaint**

**pursuant to the U.S. Constitution**

RESPECTFULLY SUBMITTED THIS THE 5th day of March, 2026.

BY THE PLAINTIFF,
KENNETH AKINS
THROUGH COUNSEL,
MICHAEL R. BROWN, ESQ.

_____

MICHAEL R. BROWN, ESQ.

Michael R. Brown, Esq., (MSBN: 99126)
THE MICHAEL R. BROWN LAW OFFICES, PLLC
120 North Congress Street, Suite 710
Jackson, MS 39201
Tel: (601) 948-5330
Fax: (601) 948-5415
Email: mbrown@mikelawms.com

Joshua P. Ginn, Esq., (MSBN: 104813)
JOSHUA P. GINN ATTORNEY AT LAW, PLLC
567 Highway 51, Suite C
Ridgeland, MS 39157
Tel: (601) 790-9344
Fax: (601) 885-4563
Email: joshua@ginn-law.com